# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Hakan K., | File No. 25-CV-4722 (JMB/DTS) |
| Petitioner, | |
| v. | |
| Kristi Noem, *Secretary, U.S. Department of Homeland Security, in her official capacity*; Todd M. Lyons, *Acting Director, Immigration and Customs Enforcement, in his official capacity*; Peter Berg, *Director, St. Paul Field Office, Immigration and Customs Enforcement, in his official capacity*; Samuel J. Olson, *Field Office Director of Enforcement and Removal Operations, Chicago Field Office, U.S. Immigration and Customs Enforcement*; Mellissa Harper, *Louisiana Field Office Director, Immigration and Customs Enforcement, in her official capacity*; and Eleazar Garcia, *Warden of the Alexandria Staging Center, Alexandria, Louisiana, in his official capacity*, | **ORDER** |
| Respondents. | |

Evangeline Dhawan-Maloney, Robichaud, Schroepfer & Correia, P.A., Golden Valley, MN, and Mehmet Y. Turkoglu, MYT Law Firm, Minneapolis, MN, for Hakan K.

Ana H. Voss and Lucas B. Draisey, United States Attorney's Office, Minneapolis, MN, for Respondents Kristi Noem, Todd M. Lyons, Samuel J. Olson, and Peter Berg.

This matter is before the Court on Petitioner Hakan K.'s Emergency Motion for a Temporary Restraining Order (TRO) against Respondents Kristi Noem, Todd. M. Lyons,

1

Peter Berg, Samuel J. Olson, Mellissa Harper, and Eleazar Garcia. (Doc. No. 7.)[1] For the reasons explained below, the Court grants the motion.

## BACKGROUND

Hakan K. is a Turkish national who entered the United States in October 2023 and has resided in the United States ever since. (Doc. No. 6 at ¶¶ 1, 12.) Upon his entry to the United States in 2022, he was taken into custody and then released on bond under 8 U.S.C. § 1226, pending a final decision on whether he should be removed. (*Id.* ¶¶ 3, 25; *see also* Doc. No. 1-1.) On December 6, 2023, Hakan K. filed an application for asylum and withholding of removal to Turkey, which remains pending. (Doc. No. 6 ¶¶ 4, 26.) He has no criminal history, has never missed a court hearing, and has a valid work permit. (*Id.* ¶¶ 4, 26.) On September 15, 2025, the Department of Homeland Security issued a notice setting a removal hearing for March 12, 2026. (Doc. No. 1-2.)

On December 1, 2025, Respondents took Hakan K. into custody when he was in a Home Depot parking lot, without providing any reason and, according to the Amended Petition, on the basis of his perceived ethnicity. (Doc. No. 6 ¶¶ 5, 7.) He has been detained since then, initially in Minnesota, but then he was transferred to Alexandria Staging Center in New Orleans, Louisiana. (*Id.* at ¶¶ 12, 17; *see also* Doc. No. 7.) Respondents are currently detaining Hakan K. based on the mandatory detention provisions of 8 U.S.C. Section 1225(b)(2). (Doc. No. 6 ¶¶ 45–48.) Hakan K. contends that because he was

---

[1] The Court refers to Petitioner by first name and initial pursuant to District policy.

released on bond pursuant to Section 1226, his detention under Section 1225 is unlawful. (*Id.* at ¶¶ 49–64.)

On December 22, 2025, Hakan K. filed a TRO, alleging that he has been transferred to Louisiana—to a staging location for deportation flights—as part of preparation to deport him and that, in light of his limited English fluency, he may have signed a voluntary deportation document mistakenly thinking that the document concerned releasing him on bond. (Doc. No. 7 at 2–3.) The TRO seeks an order restraining Respondents from removing him from the United States while the Amended Petition is pending and without notice to Petitioner's counsel and an opportunity to be heard. (Doc. No. 6 at 2.)

## DISCUSSION

Because the balance of the applicable factors favor imposing the requested relief, the Court grants the motion for a TRO.[2]

When considering a motion for a TRO, courts consider the following four factors: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981); *see also Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022) ("[T]he standard for analyzing a motion for a temporary restraining order is the same as a motion for preliminary injunction."). No one

---

[2] As a threshold issue, the Court finds that the physical transfer of Hakan K. to Louisiana after the initiation of this proceeding did not deprive this Court of jurisdiction over his habeas petition. *Weeks v. Wyrick*, 638 F.2d 690, 692 (8th Cir. 1981).

3

factor is determinative and courts "flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene." *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999) (quotation omitted).  The central question is whether justice requires preserving the status quo until the merits are determined.  *See Dataphase*, 640 F.2d at 113.  The moving party bears the burden to establish these factors.  *E.g.*, *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

Here, the record before the Court at this time indicates that the factors weigh in favor of granting Hakan K.'s request to enjoin Respondents from removing him from the United States to maintain the status quo pending the determination of his Amended Petition. Justice requires keeping Hakan K. in the United States until the merits of his underlying habeas action can be determined.  If Respondents transfer him out of the country, he will suffer irreparable harm: he may lose access to counsel, he may no longer be able to participate in litigation, and his pending application for asylum may be rendered moot.[3] These are injuries that are concrete and imminent and that cannot be remedied after they occur.  "Although access to effective counsel is not a constitutional right in a civil proceeding, the Court agrees that deprivation of access to retained counsel is plainly harmful to a litigant since it handicaps his ability to effectively present his case to the court."  *Escalante v. Bondi*, No. 25-CV-3051 (ECT/DJF), 2025 WL 2212104, at *2 (D.

---

[3] The Court is also concerned that Hakan K. may be removed to a place where he "faces severe persecution" (Doc. No. 8 at 9) but does not have enough information at this time to assess how concrete that specific possibility is.

4

Minn. July 31, 2025), *report and recommendation adopted O. E. v. Bondi*, 2025 WL 2235056 (D. Minn. Aug. 5, 2025). Preserving Hakan K.'s access to judicial review, preventing unlawful detention, and preventing unlawful deportation are compelling and irreparable harms. *E.g.*, *Fuentes v. Olson*, No. 25-CV-4456 (LMP/ECW), 2025 WL 3524455, at *6 (D. Minn. Dec. 9, 2025) (finding that "unlawful detention is a prime example of irreparable harm" (citing *Matacua v. Frank*, 308 F. Supp. 3d 1019, 1025 (D. Minn. 2018)).

By comparison, there is no indication that Respondents will experience any harm from an order temporarily prohibiting his transfer out of the country while this action is pending. *Hoque v. Trump, et al.*, No. 25-CV-1576 (JWB/DTS), Doc. No. 15 (D. Minn. Apr. 22, 2025) (temporarily enjoining respondents from transfer out of district while habeas petition was pending); *see also Nebraska v. Biden*, 52 F.4th 1044, 1047 (8th Cir. 2022) ("[T]he equities strongly favor an injunction considering the irreversible impact [the challenged agency] action would have as compared to the lack of harm an injunction would presently impose.").

Moreover, Hakan K.'s arguments also raise a substantial question about the legality of the terms of his detention. Courts have overwhelmingly rejected Respondents' argument that section 1225 justifies detention. *Fuentes v. Olson*, 2025 WL 3524455, at *1 ("The Government has now been told nearly 300 times (and counting) that its mandatory-detention scheme is unlawful."). Thus, Hakan K. appears very likely to succeed on the merits of his legal argument.

Finally, the public interest served by deporting Hakan K. is outweighed by the interest of the public in ensuring due process, judicial review, and the rule of law.

For these reasons, and based on the record presented to the Court at this time, the Court concludes all four factors favor granting the TRO.[4]

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT Petitioner Hakan K.'s Emergency Motion for a Temporary Restraining Order (Doc. No. 7) is GRANTED, as follows:

1. Respondents shall not remove, transfer, or otherwise facilitate the removal of Petitioner from the United States of America.

2. No other person or agency shall remove, transfer, or otherwise facilitate the removal of Petitioner from the United States on Respondents' behalf.

3. This Order is effectively immediately and shall expire fourteen days after the date of entry unless Petitioner shows good cause for its extension. In the event the Court determines that an extension of this fourteen-day period of time is necessary, the Court will set a briefing schedule by separate order.

Dated: December 23, 2025                        /s/ *Jeffrey M. Bryan*
                                                Judge Jeffrey M. Bryan
                                                United States District Court

---

[4] The Court determines that a bond under Federal Rule of Civil Procedure 65(c) is not necessary because the TRO seeks to prevent constitutional deprivations and because Respondents face no identifiable risk of monetary loss. A bond is also not necessary because this matter is closely associated with important public interests. *See, e.g.*, *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1043 (8th Cir. 2016).